# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

NAKREISHA MCFARLAND,

      **Plaintiff,**

      **v.**                      **Case No. 25-CV-250**

ZACHARIAH KUIPER and
NICHOLAS COCA,

      **Defendants.**

## ORDER

### 1. Introduction

Plaintiff Nakreisha McFarland, proceeding pro se, alleges that the defendants Zachariah Kuiper and Nicholas Coca (collectively "defendants") violated her Fourth Amendment rights on March 4, 2024, during a traffic stop. (ECF No. 1 at 2.) District Judge Brett Ludwig screened McFarland's complaint on February 25, 2025, and found that her allegations were plausible under 42 U.S.C. § 1983. (ECF No. 4.) The defendants moved for summary judgment on May 15, 2026. (ECF No. 25.)

All parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 3, 10.) The court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). The motion for summary judgment is fully briefed and ready for resolution.

## 2. Preliminary Matters

Before addressing the merits of the defendants' motion for summary judgment the court notes that McFarland did not comply with the local rules regarding summary judgment procedures. *See* Civ. L. R. 56 (E.D. Wis). The local rules require a party opposing a motion for summary judgment to file a response to the moving party's proposed findings of fact, reproducing "each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon[.]" *See* Civ. L. R. 56(b)(2)(B)(i). In addition, a party opposing a motion for summary judgment must file "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the facts described in that paragraph." *See* Civ. L. R. 56(b)(2)(B)(ii). These requirements help the court determine which facts are genuinely disputed and why.

The defendants submitted a statement of proposed findings of fact in support of their motion for summary judgment. (ECF No. 30.) McFarland responded (ECF No. 32)

but did not reproduce each of the defendants' proposed findings of fact as required by the local rule. Although McFarland claims to dispute twelve of the defendants' 52 proposed facts, her responses consist mainly of legal arguments and conclusory statements. (ECF No. 32.) Some of her responses reference "video evidence" but do not specify which video is being cited. (*Id*. at 2–3.)

As a result, McFarland fails to create a genuine dispute of material fact. *See* Civ. L. R. 56(b)(2)(B). Moreover, the video evidence speaks for itself, and McFarland's interpretation of it does not demonstrate that the defendants' proposed facts are genuinely in dispute.

Because McFarland failed to properly respond to the defendants' proposed findings of fact, the court will consider the defendants' facts undisputed for purposes of summary judgment. *See* Fed. R. Civ. P. 56(e); *see also Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules, even against pro se litigants).

## 3. Facts

On March 2, 2024, Racine Police Officers Nicholas Coca and Zechariah Kuiper were patrolling the City of Racine. (ECF No. 30, ¶¶ 7–12.) At approximately 11:45 P.M., the defendants saw a Nissan Infiniti driving ahead of them without a visible license plate. (*Id*., ¶¶ 12–15.) In lieu of a license plate, the defendants observed a paper document advertising a motor vehicle retailer. (*Id*., ¶ 15.) Plaintiff Nakreisha McFarland was driving

3

the vehicle. (*Id.*, ¶ 13.) The defendants activated their squad car's emergency lights to initiate a traffic stop. (*Id.*, ¶¶ 16, 18.) McFarland continued driving, made a U-turn, and then stopped her vehicle. (*Id.*, ¶ 19; ECF No. 31 at 0:30–1:00 (squad camera recording).)

Upon initiating the stop, Officer Coca radioed dispatch that he had stopped McFarland because her vehicle did not have a license plate. (ECF No. 30, ¶ 21; ECF No. 31 at 1:08–10 (Officer Coca's body camera).) As Officer Coca approached McFarland's vehicle, McFarland rolled down her window and asked, "Why would you follow me like that?" (ECF No. 31 at 1:37–41 (Officer Coca's body camera).) Officer Coca responded, "Because I don't see any license plates." (*Id.*; ECF No. 30, ¶ 24.) McFarland explained that she had just recently purchased the vehicle and that a temporary license plate was displayed in the back window. (ECF No. 31 at 1:42–44 (Officer Coca's body camera); ECF No. 30, ¶ 25.) Noticing for the first time what resembled evidence of temporary registration attached to the inside of a heavily tinted rear window, Officer Coca stated he could not read it because the rear window was tinted. (ECF No. 31 at 1:44–46 (Officer Coca's body camera); ECF No. 30, ¶¶ 26–29.)

Officer Coca then asked McFarland for her driver's license. (ECF No. 31 at 2:30–35 (Officer Coca's body camera); ECF No. 30, ¶ 33.) She refused to provide it, responding, "No. This is an unlawful stop." (*Id.*) Despite repeated requests, McFarland would not provide her driver's license and instead asked to speak with Officer Coca's supervisor. (ECF No. 31 at 2:35–45 (Officer Coca's body camera); ECF No. 30, ¶¶ 34–35.)

4

Officer Kuiper then approached and told McFarland several times that, if she did not provide her driver's license, the officers would remove her from the vehicle. (ECF No. 31 at 3:00–20 (Officer Coca's body camera); ECF No. 30, ¶ 36.) McFarland still refused to provide her driver's license. (*Id*.) Kuiper then opened the driver's side door and several times ordered McFarland to step out of the vehicle, but again she refused. (ECF No. 31 at 3:20–28 (Officer Coca's body camera); ECF No. 30, ¶ 37.) Officer Kuiper then moved McFarland's legs outside the vehicle while Officer Coca held her arms, and together they pulled her from the vehicle. (ECF No. 31 at 3:28–48 (Officer Coca's body camera); ECF No. 30, ¶¶ 38–40.) The defendants then handcuffed McFarland. (ECF No. 31 at 3:48–4:00 (Officer Coca's body camera); ECF No. 30, ¶ 38.)

Officer Kuiper informed McFarland that she could either identify herself or be taken to the Racine County Jail for identification. (ECF No. 31 at 5:03–5:08 (Officer Coca's body camera); ECF No. 30, ¶ 41.) Around this time, Sergeant Mitchell, the shift supervisor, arrived and spoke with McFarland about what was going on. (ECF No. 31 at 6:00–9:10 (Officer Coca's body camera); ECF No. 30, ¶ 42.) In response to a question from Sergeant Mitchell, McFarland identified her last name as McFarland. (ECF No. 31 at 6:40 (Officer Coca's body camera).) Officer Coca returned to his squad car, provided dispatch with the temporary license plate number, and asked for a photograph of the registered owner. (ECF No. 31 at 10:30–45 (Officer Coca's body camera); ECF No. 30, ¶ 43.) Dispatch

sent a photograph of McFarland, and Officer Coca confirmed her identity. (ECF No. 30, ¶ 44.)

Officer Coca then issued McFarland three citations:

(1) Failure to attach a registration plate in a conspicuous place and/or to display the plate such that it can be readily and distinctly seen and read, in violation of Wisconsin Statutes section 341.15(2);

(2) Failure or refusal to comply with a lawful order, signal, or direction of a traffic officer, in violation of Wisconsin Statutes section 346.04(1); and

(3) Obstructing a police officer, in violation of section 66-142 of the City of Racine Municipal Code of Ordinances.

(ECF No. 30, ¶ 45; ECF No. 29, ¶ 38.) Officer Coca explained the reasons for the citations and told McFarland she was free to leave. (ECF No. 31 at 26:00–27:49 (Officer Coca's body camera); ECF No. 29, ¶¶ 39–40.)

On April 15, 2025, the City of Racine Municipal Court held a court trial at which the City of Racine prosecuted McFarland for all three citations. (ECF No. 30, ¶ 50.) The municipal court judge found McFarland guilty of each citation and entered judgment. (ECF No. 27-1.) McFarland did not appeal the municipal court's judgment. (ECF No. 30, ¶ 52.)

### 4. Summary Judgment

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable

substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence that would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot just rely on its pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## 5. Analysis

McFarland claims the defendants lacked reasonable suspicion to initiate a traffic stop and therefore violated her Fourth Amendment rights. (ECF No. 1 at 2.) She also asserts that the defendants' conduct during the stop was unlawful. (*Id.*) In response, the

defendants argue they had reasonable suspicion to justify the stop and that their actions during the stop were reasonable. (ECF No. 26 at 7–11.)

### 5.1. The Traffic Stop

The Fourth Amendment protects individuals from "unreasonable searches and seizures." *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000); U.S. Const. Amend. IV. The United States Supreme Court has held that, "[w]hen a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment." *Brendlin v. California*, 551 U.S. 249, 251 (2007). Even a brief detention during a traffic stop qualifies as a seizure. *See Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 456 (7th Cir. 2010).

A traffic stop is constitutional if it is supported by "specific and articulable facts giving rise to reasonable suspicion" of criminal activity. *United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010) (quoting *Jewett v. Anders*, 521 F.3d 818, 823–25 (7th Cir. 2008)). The key inquiry is whether the officer reasonably believed a traffic violation occurred, not whether the plaintiff actually violated the law. *See United States v. Yang*, 39 F.4th 893, 899–900 (7th Cir. 2022); *see also United States v. Cole*, 21 F.4th 421, 428 (7th Cir. 2021). Whether an officer's belief is reasonable is an "objective standard, based upon the facts available to the officers at the moment of the seizure." *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)).

The defendants argue they had reasonable suspicion to believe McFarland was violating Wisconsin Statute Section 341.15(2) after observing her driving a vehicle

without a visible license plate. (ECF No. 26 at 7.) McFarland does not dispute that the defendants believed she was operating her vehicle without a license plate. (ECF No. 35 at 1–3.) Instead, she argues that whether the defendants "reasonably failed to observe" her temporary license plate is a factual question for a jury to decide. (*Id*.)

Wisconsin Statute Section 341.15(2) states:

"Registration plates shall be attached firmly and rigidly in a horizontal position and conspicuous place. The plates shall at all times be maintained in a legible condition and **shall be so displayed that they can be readily and distinctly seen and read.** Any peace officer may require the operator of any vehicle on which plates are not properly displayed to display such plates as required by this section."

Wis. Stat. § 341.15(2) (emphasis added).

The defendants followed McFarland in their squad car late at night, when it was dark. (ECF No. 28, ¶¶ 5–6; ECF No. 29, ¶¶ 6–7.) McFarland's temporary license registration was affixed to the inside of her rear window, which was heavily tinted. (ECF No. 28, ¶ 15; ECF No. 29, ¶¶ 22–24.) As a result, neither officer could see it. (ECF No. 28, ¶¶ 8–9; ECF No. 29, ¶¶ 11–12.) When McFarland pointed out her temporary registration, Officer Coca explained that he could not read it because of the tinted window. (ECF No. 31 at 1:37–44 (Officer Coca's body camera); ECF No. 30, ¶¶ 27–28.)

Under these circumstances, the defendants had an objectively reasonable basis to believe McFarland was violating Wis. Stat. § 341.15(2) at the time of the stop. *See United States v. Tipton*, 3 F.3d 1119, 1122 (7th Cir. 1993) (explaining that a

"driver's failure to display prominently a registration sticker, alone, would provide an officer with reasonable suspicion sufficient to justify, at the very least, an investigatory stop").

McFarland has not provided any evidence to suggest that the defendants' belief that she was driving without a license plate was unreasonable. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (holding that "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial'") (quoting Fed. R. Civ. P. 56(e)). Her argument that a jury could conclude that the defendants could see the temporary registration does not create a genuine dispute of fact. *See Anderson*, 477 U.S. at 247–48 (1986) (noting that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment").

Therefore, the defendants are entitled to summary judgment on McFarland's claim that the defendants violated her Fourth Amendment rights when they stopped her vehicle.

### 5.2. The Defendants' Actions During the Stop

McFarland also argues that the traffic stop should have ended once the defendants saw her temporary license registration. (ECF No. 35 at 5.) She claims the defendants violated her Fourth Amendment rights by forcefully removing her from her vehicle. (ECF No. 1 at 1.)

In response, the defendants contend that the Fourth Amendment allows officers to request identification, to order occupants out of a vehicle, and to use reasonable force if necessary to carry out that order. (ECF No. 26 at 11.)

A traffic stop "'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405 (2005)). "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop." *Id*. at 355. This includes "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. (citing *Delaware v. Prouse*, 440 U.S. 648, 658–660 (1979)). It is well established that officers may routinely ask for a driver's license and registration during a traffic stop. *See Dexter*, 165 F.3d at 1126; *see also United States v. Finke*, 85 F.3d 1275, 1279–80 (7th Cir. 1996).

When Officer Coca initiated the traffic stop, he asked McFarland for her driver's license. (ECF No. 31 at 2:30–2:35 (Officer Coca's body camera).) McFarland refused, asserting that the stop was unlawful. (*Id*.) As explained above, the stop was lawful because the defendants had reasonable suspicion to believe McFarland was violating Wis. Stat. § 341.15(2). Because the stop was lawful, the defendants were entitled to request McFarland's driver's license without violating her Fourth Amendment rights. *See Dexter*, 165 F.3d at 1126 (noting that an officer may ask for a driver's license and registration

during a traffic stop); *see also Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185 (2004) (holding that "a police officer is free to ask a person for identification without implicating the Fourth Amendment").

When McFarland refused to produce her driver's license, the defendants were not required to let her drive away. *See United States v. Jackson*, 377 F.3d 715, 717 (7th Cir. 2004). In fact, after a lawful traffic stop, officers may order a driver to exit the vehicle without violating the Fourth Amendment. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (explaining that, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures"). Moreover, a driver's failure to produce a valid license or other proper identification can justify a full custodial arrest. *See Jackson*, 377 F.3d at 717; *United States v. Garcia*, 376 F.3d 648, 650 (7th Cir. 2004) ("[A] driver who lacks a license is subject to full custodial arrest and thorough search) (citing *Gustafson v. Florida*, 414 U.S. 260 (1973)).

McFarland alleges that the defendants "forcibly removed" her from the vehicle but offers no evidence that the force used was greater than reasonably necessary. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (stating that "[a]n officer's use of force is unreasonable from a constitutional point of view only if, 'judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest'") (quoting *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir.

12

1987)). Officer Coca's body camera footage shows the defendants gently lifting McFarland out of her vehicle to detain her until the traffic stop concluded. (ECF No. 31 at 3:25–45 (Officer Coca's body camera).) McFarland's bald assertion that the defendants "forcibly removed" her is not enough to defeat summary judgment. *See Drake v. 3M*, 134 F.3d 878, 887 (7th Cir. 1998) (noting that bald assertions without evidence are insufficient to create a genuine issue of material fact).

There is also no evidence in the record indicating that the defendants unlawfully prolonged the traffic stop. *See United States v. Muriel*, 418 F.3d 720, 726 (7th Cir. 2005) (holding that "[a]n officer conducting a valid traffic stop can detain the occupants of the vehicle long enough to accomplish the purpose of the stop"). Very much to the contrary, the stop was prolonged by virtue of McFarland's refusal to cooperate. The stop certainly would have been shorter had McFarland provided her driver's license as requested. The defendants detained McFarland for less than 30 minutes, which was the time required to identify her and issue three citations. *See Tipton*, 3 F.3d at 1122 (noting officers were not required to "abort the stop even if they had noticed the improperly affixed sticker prior to questioning"). McFarland was detained for a reasonable period of time, and nothing in the record suggests that the defendants unnecessarily prolonged the stop. *See Ruiz*, 785 F.3d at 1144.

No reasonable jury could find that the defendants' conduct before, during, or after the traffic stop violated McFarland's Fourth Amendment rights. *See Matsushita Elec. Indus.*

*Co.*, 475 U.S. at 586–87 (stating that "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'") (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). Therefore, the defendants are entitled to summary judgment on McFarland's Fourth Amendment claims.

**IT IS THEREFORE ORDERED** that the defendants' Motion for Summary Judgment (ECF No. 25) is **GRANTED**. This action is dismissed with prejudice. The Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 1st day of July, 2026.

WILLIAM E. DUFFIN
U.S. Magistrate Judge